UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
CENTRAL DIVISION
FRANKFORT

|  |  |  |
|---|---|---|
| SAZERAC BRANDS, LLC, and SAZERAC COMPANY, INC., | ) ) ) ) ) ) ) ) ) ) ) ) ) ) | Civil No. 3:15-cv-00076-GFVT |
| Plaintiffs, | | |
| V. | | **OPINION** |
| | | **&** |
| PERISTYLE, LLC, and PERISTYLE HOLDINGS, LLC, | | **ORDER** |
| Defendants. | | |

\*\*\*   \*\*\*   \*\*\*   \*\*\*

People say that in Kentucky there are more bourbon barrels than people.  This is not surprising, considering ninety-five percent of the world's bourbon supply is produced right here in the Bluegrass.  Kentucky claims the birth of the world's first true bourbon whiskey, and Kentucky claims the ability to produce the world's *best* bourbon whiskey thanks to its limestone waters, grain-friendly climate, warm summers, and cold winters.  There is an undeniably unique connection between bourbon and the Commonwealth, and the bourbon industry has provided the state with a rich history, tourism opportunities, economic stimulation, and healthy competition.  This lawsuit implicates all of those things.

The Commonwealth is already home to a number of bourbon distilleries, and the Defendant Peristyle is in the process of adding a new one into the mix—or, rather, Peristyle is in the process of renovating a very old one.  In 2014, Peristyle owners Will Arvin and Wes Murray purchased the abandoned Old Taylor Distillery property in Millville, Kentucky, and they have been working on its restoration ever since.  The property is noteworthy in both its appearance

and history: a striking stone castle-like structure, the property was first constructed in 1887 by Colonel E. H. Taylor, a legendary figure considered by many to be the father of the modern bourbon industry. In tribute to its initial owner, the property greets visitors with a historic sign bearing the name "The Old Taylor Distillery Company."

Peristyle has renamed the property "Castle & Key," and Peristyle intends to do all of its business, including marketing its future whiskeys, under that name going forward. But throughout the property's renovation period, the media and owners have repeatedly referred to the location as "the former Old Taylor Distillery" or simply "Old Taylor." This presents a problem for the Plaintiff Sazerac, who owns trademark rights in the words OLD TAYLOR and COLONEL E. H. TAYLOR and produces bourbons under both of those names.

Sazerac brings this action for trademark infringement and unfair competition, arguing Peristyle's repeated "Old Taylor" references impermissibly trade off Sazerac's goodwill. But Peristyle maintains it has not used the words in a commercial sense that infringes upon Sazerac's trademarks; rather, it seeks only to legally capitalize on the unique history of its property. For the reasons that follow, the Court GRANTS summary judgment in favor of Peristyle.

**I**

This case ultimately turns on the legal standards of the Lanham Act, 15 U.S.C. § 1051, *et seq*. But first, a history lesson.[1] Edmund H. Taylor was born in 1830 to parents who passed away shortly thereafter. Taylor was subsequently raised by his uncles: a great-uncle Zachary Taylor, the soon-to-be President of the United States; and another uncle also named Edmund Taylor, a banker from Lexington, Kentucky. The young Taylor began his own career in the

---

[1] The following historical account is drawn primarily from REID MITENBULER, BOURBON EMPIRE: THE PAST AND FUTURE OF AMERICA'S WHISKEY 152-159 (2015), and GERALD CARSON, THE SOCIAL HISTORY OF BOURBON 87-90 (1963).

banking industry, traveling throughout Kentucky during the 1850's to open various bank branches. As a result of his travels, Taylor became acquainted with James Crow and Oscar Pepper, two prominent distillers. And then, as one historian describes, Taylor simply "found himself in the right place at the right time."[2]

Taylor first became involved with Crow and Pepper as a financier, and he later acquired the Pepper distillery himself. This launched the start of Taylor's legendary bourbon empire. Taylor, by this point a Colonel,[3] founded a number of distilleries in the Frankfort, Kentucky, area. One distillery, originally known as Old Fire Copper (O.F.C.), is located on the site of what is today Sazerac's Buffalo Trace Distillery. Taylor also built the Old Taylor Distillery in 1887, a limestone structure resembling a medieval castle with pergolas, pools, turrets, and gardens. Over time, this distillery fell into ruin. But in 2014, investors Will Arvin and Wes Murray purchased the eighty-two acre site with plans to renovate the property and restore it to its original grandeur—a tall order, as the 1887 Old Taylor Distillery was once described as "the most magnificent plant of its kind in Kentucky."[4]

History books describe a number of abandoned distilleries scattered throughout Kentucky, and, indeed, distilleries as well as distillers have risen and fallen in prominence over the years. But Colonel Taylor stands out as particularly influential. According to one author, Colonel Taylor's legacy is unique from that of other distillers who ceased production due to the passage of time and industry consolidation:

> Old Taylor is an exception. Almost every single bottle of bourbon you buy today carries the fingerprints of its founder, Colonel Edmund H. Taylor Jr. He

---

[2] *See* MITENBULER, *supra* note 1, at 153.

[3] Despite Taylor's lack of military service, he was awarded an honorary colonelcy after the Civil War. *See, e.g.*, *History: Becoming the Colonel – Part I*, BOWTIED & BOURBONED (Nov. 29, 2015), https://bowtied-and-bourboned.com/2015/11/29/history-becoming-the-colonel-part-i-2/.

[4] *Id.* at 151.

3

>combined into one cohesive whole all the different parts of the new bourbon industry: marketing, finance, quality control, and lobbying.[5]

And another bourbon historian has described Colonel Taylor as "the most remarkable man to enter the whiskey industry during the post-Civil War years"—"a bridge between the old ways and the new."[6] It is not surprising, then, that both Sazerac and Peristyle seek to benefit from Colonel Taylor's illustrious history and renowned reputation.

Arvin and Murray's decision to renovate the Old Taylor Distillery has generated significant media attention. Several newspaper articles have featured the distillery's restoration, with particular press surrounding Arvin and Murray's hiring of Marianne Barnes, Kentucky's first female Master Distiller since Prohibition.[7] When Arvin and Murray first purchased the abandoned property in late April 2014, they did not yet have a name for the distillery. Accordingly, the property was referred to by the media and owners as "the former Old Taylor Distillery" or simply "Old Taylor" with some frequency, no doubt in part because of the historic sign displayed above the doorway of the property reading "The Old Taylor Distillery Company."[8] [*See* R. 1 at 8.] After more than a year of such references, Sazerac filed suit in federal court for trademark infringement, federal unfair competition, and common law relief. [*Id.* at 1-14.] In its complaint, Sazerac maintained Peristyle was offering event-hosting services on the property in connection with Sazerac's OLD TAYLOR and COLONEL E. H. TAYLOR

---

[5] *Id.* at 152.
[6] CARSON, *supra* note 1, at 88.
[7] *See, e.g.*, Matt Rodbard, *Meet Kentucky's First Female Master Distiller Since Prohibition*, SAVEUR (March 9, 2016), http://www.saveur.com/marianne-barnes-female-master-distiller-kentucky-bourbon.
[8] *See, e.g.*, Janet Patton, *Old Taylor Distillery's Owners Resurrecting Its Castle*, LEXINGTON HERALD-LEADER (June 14, 2014); http://www.kentucky.com/living/travel/article44493333.html; Sara Havens, *Marianne Barnes, Kentucky's First Female Master Distiller, Has Big Plans for Former Old Taylor Distillery*, INSIDER LOUISVILLE (March 18, 2015, 4:34 p.m.), https://insiderlouisville.com/business/Marianne-barnes-kentuckys-first-female-master-distiller.

trademarks. [*Id.* at 7.] Sazerac also alleged Peristyle was using the two trademarks in connection with its plans to market and sell bourbon and other spirits. [*Id.* at 8.]

The factual posture of the lawsuit has changed since Sazerac first filed that complaint. For instance, in February 2016, Peristyle issued a press release explaining its decision to officially rename the property "Castle & Key." [*See* R. 115 at 13.] By the time the parties filed their cross-motions for summary judgment, Peristyle had been doing business under the Castle & Key name for almost a full twelve months, with a website and various social media accounts branded accordingly.[9] But despite this change in circumstances, Sazerac persists in its claims. Sazerac's amended complaint, filed in August 2016, articulates three ways it believes Peristyle has infringed on the OLD TAYLOR and COLONEL E. H. TAYLOR marks. [*See* R. 52.]

First, Sazerac reasserts its claim that Peristyle has offered and intends to continue offering "event-hosting services" on distillery property in connection with the marks. [*Id.* at 8; *see also* R. 20-5; R. 20-6; R. 20-7.] Second, Sazerac claims Peristyle wrongfully included some of Sazerac's other marks, specifically RIP VAN WINKLE and PAPPY VAN WINKLE, as keyword metatags on the Castle & Key website. [R. 52 at 10-11.] Finally, Sazerac takes issue with a number of social media posts or advertisements wherein Peristyle refers to the property as the "former Old Taylor Distillery" or simply "Old Taylor." [*Id.* at 11-13; *see also* R. 20-12 through R. 20-21.] Sazerac ultimately seeks both damages and an injunction preventing Peristyle from making such references going forward.

---

[9] *See* Castle & Key, FACEBOOK, https://www.facebook.com/castleandkey/ (last visited July 5, 2017); Castle & Key Distillery (@castleandkey), INSTAGRAM, https://www.instagram.com/castleandkey/ (last visited July 5, 2017); Castle & Key (@castleandkey), TWITTER, https://twitter.com/castleandkey (last visited July 5, 2017).

**II**

**A**

All of Sazerac's claims for relief are analyzed under the same legal framework. *See Wynn Oil Co. v. Am. Way Serv. Corp.*, 943 F.2d 595, 604 (6th Cir. 1991) (explaining Lanham Act trademark infringement and unfair competition claims both implicate the same legal standard); *Oaklawn Jockey Club, Inc. v. Kentucky Downs, LLC*, 184 F. Supp. 3d 572, 575 (W.D. Ky. 2016) (explaining Kentucky common law involves the same legal analysis as the federal Lanham Act). In most trademark infringement actions, the outcome rests on a "likelihood of confusion" analysis—courts seek to determine "whether the defendant's use of the disputed mark is likely to cause confusion among consumers regarding the origin of the goods offered by the parties." *Daddy's Junky Music Stores, Inc. v. Big Daddy's Family Music Center*, 109 F.3d 275, 280 (6th Cir. 1997). The Sixth Circuit has developed an eight-factor test to help courts reach this conclusion, and cases walking step-by-step through that test abound. But in certain situations, a threshold question exists: does a defendant's use of the mark in question actually constitute "trademark use" for purposes of Lanham Act liability? *See Grubbs v. Sheakley Grp., Inc.*, 807 F.3d 785, 793 (6th Cir. 2015). The present dispute requires this threshold inquiry.

Sazerac maintains Peristyle has used its marks in a number of trademark ways, ranging from promotional materials and social media communication to photos of the distillery featuring the prominent "Old Taylor Distillery Company" sign, which was affixed to the property before Arvin and Murray purchased it. While the majority of Sazerac's claims involve the OLD TAYLOR and COLONEL E. H. TAYLOR marks, Sazerac's claim regarding keyword metatags implicates Sazerac's RIP VAN WINKLE and PAPPY VAN WINKLE marks instead. The Court addresses the metatag question first.

**1**

When Peristyle's initial website launched in February 2016, the words "Rip Van," "Van Winkle," and "Pappy" were contained in the site as keyword metatags. According to Peristyle, its web designer used the words without authorization and the words were "meant to be used as a placeholder and replaced before the website went live." [R. 120 at 30; *see also* R. 106-9.] The words were never replaced as planned, and the website launched despite the words' inclusion. Sazerac learned of this and raised the issue with Peristyle, who then removed the words from the site by June 2016. [R. 106-9; R. 118-2.] Sazerac alleges this temporary inclusion of the words as metatags constitutes trademark infringement, as the words are all variations of Sazerac's RIP VAN WINKLE and PAPPY VAN WINKLE marks. [R. 115 at 22.]

In 2003, the Sixth Circuit defined metatags as "a list of words hidden in a web site acting as an index or reference source identifying the content of the web site for search engines." *PACCAR, Inc. v. TeleScan Techs., LLC*, 319 F.3d 243, 248 n. 2 (6th Cir. 2003) (internal quotation marks and citation omitted), *overruled in part on other grounds, KP Permanent Make-Up, Inc. v. Lasting Impression I, Inc.*, 543 U.S. 111 (2004). *See also Tdata Inc. v. Aircraft Technical Publishers*, 411 F. Supp. 2d 901, 904 n. 4 (S.D. Ohio 2006) (acknowledging same definition). Throughout the early 2000's, courts reached different conclusions as to whether using another company's trademarks as metatags violated the Lanham Act. *Compare 1-800-Contacts, Inc. v. WhenU.Com, Inc.*, 414 F.3d 400, 409 (2d Cir. 2005) (describing metatag use as an "internal utilization of a trademark" never communicated to the public, which does not cause consumer confusion and thus does not constitute trademark infringement) *with Tdata,* 411 F. Supp. 2d at 907 (finding metatag use "constitutes infringing use of the mark to pull consumers to [defendant's] website and the products it features"); *Victoria's Secret Stores v. Artco Equip. Co.,*

*Inc.*, 194 F. Supp. 2d 704, 724 (S.D. Ohio 2002) (classifying use of the plaintiff's mark in defendant's metatags as an illicit attempt to "bait and switch" internet users). The Court need not choose between those two lines of reasoning, however, because the record reflects noteworthy technological change when it comes to how search engines function.

Peristyle has submitted evidence that leading search engines such as Google, Yahoo, and Bing stopped ranking websites based on keyword metatags a number of years ago.[10] [*See* R. 133-4; R. 133-5; R. 133-6.] And more recent case law supports this position. *See Network Automation, Inc. v. Advanced Systems Concepts, Inc.*, 638 F.3d 1137, 1146 n. 3 (9th Cir. 2011) ("Modern search engines such as Google no longer use metatags. Instead they rely on their own algorithms to find websites."); *Ascentive, LLC v. Opinion Corp.*, 842 F. Supp. 2d 450, 467 (E.D.N.Y. 2011) (noting that, while early search engines relied heavily on keyword metatags to find and rank websites, modern search engines "make little if any use of metatags").

Although Sazerac points to strongly worded language from the cases that find trademark infringement based on metatag use, that language predates Peristyle's evidence of technological change. [*See* R. 115 at 38-39 (citing *Tdata*, 411 F. Supp. 2d at 906, n. 7, 911; *Victoria's Secret Stores*, 194 F. Supp. 2d at 725, 727-28).] Sazerac fails to explain why metatags should still form the basis for Lanham Act liability in light of major search engines' change in policy, and Sazerac also presents no evidence that Peristyle's temporary inclusion of the metatags caused or was

---

[10] Interestingly, the 2009 Google press release references frequent trademark abuse as a reason it stopped using keyword metatags. [R. 133-4 at 3.] *See also* Matt McGee, *Google: Stop Suing Over the Meta Keywords Tag, We Don't Use It*, SEARCH ENGINE LAND (Sept. 21, 2009, 1:00 p.m.), http://searchengineland.com/google-stop-suing-over-the-keywords-tag-we-dont-use-it-26194.

likely to cause any consumer confusion.[11]  Based on the current record, no reasonable factfinder would find against Peristyle on this claim.[12]

2

With the metatag issue resolved, the Court focuses on the heart of the dispute: Peristyle's use of the phrase "Old Taylor" in a variety of fliers, advertisements, social media posts, and news articles, and Peristyle's desire to maintain the historic "Old Taylor Distillery Company" sign on its property despite rebranding itself as Castle & Key.  Sazerac acknowledges that Peristyle can explain the history of the distillery and Colonel Taylor's involvement there to its visitors during distillery tours, and Sazerac admits the distillery's factual history could even be memorialized in a brochure for Castle & Key visitors.  [*See* Transcript ("Tr.") 10-11.]  But Sazerac's briefs still contain laundry lists of the ways it believes Peristyle has been using "Old Taylor" to infringe on Sazerac's marks.  [*See, e.g.*, R. 115 at 11-18; R. 140 at 5-8.]

In some cases, a threshold question exists "as to whether the challenged use of a trademark identifies the source of the goods; if not, that use is in a 'non-trademark way' outside the protections of trademark law."  *Grubbs*, 807 F.3d at 793.  Simply put, a party does not violate trademark law solely by using words another entity has trademarked.  To even trigger a trademark infringement inquiry, a party must use the challenged mark in a way that "identifies

---

[11] Even during the time period in which metatags were commonly used to rank search results, Sixth Circuit law made clear that using another party's trademarks as metatags alone did not trigger liability. Courts were still tasked with considering whether the metatag use was "likely to cause confusion among consumers regarding the origin or affiliation of the web sites."  *PACCAR*, 319 F.3d at 258.  Therefore, to the extent metatag use would still be considered trademark use despite search engines' technological advances, the Court's conclusion does not change.  Summary judgment in favor of Peristyle is appropriate, as Sazerac has not presented evidence of any consumer confusion brought on by the temporary metatag use.

[12] The Court notes that its evaluation of the record on this point remains the same with or without the testimony of Peristyle's expert Mr. Scott Clark, whose testimony Sazerac has moved to exclude.  [*See* R. 122.]

the source" of the party's goods or services. *Id. See also Hensley Mfg v. ProPride, Inc.*, 579 F.3d 603, 610-11 (6th Cir. 2009).

In the present case, Peristyle has not identified itself as the source of Sazerac's Old Taylor or Colonel E. H. Taylor bourbons; it has identified itself as the former "Old Taylor Distillery Company," which, in fact, it is. For example, before Peristyle adopted the name Castle & Key, it invited future customers to sign up for a "Former Old Taylor Distillery" mailing list [R. 109-18; R. 109-21]; sent newsletters promoting products from the "Former Old Taylor Distillery" [R. 109-22; R. 109-23]; created fliers with headings such as "The Historic Old Taylor Distillery Coming Soon!" [R. 109-24; R. 109-25]; allowed a third party barrel storage company to issue marketing materials identifying the distillery as "the origin that set the standard: the distillery formerly known as: Old Taylor" [R. 115 at 14]; and frequently identified itself in "Old Taylor" language on social media.

Although Sazerac maintains all of those references constitute trademark use, none of the references identifies Peristyle as the source of Sazerac's goods. Even where Peristyle referred in some way to Old Taylor bourbon (that is, the original Old Taylor whiskey produced by Colonel Taylor, not the kind currently produced by Sazerac at Buffalo Trace), Peristyle did nothing more than recount a historical fact. [*See* R. 109-26 (displaying a Twitter post from Marianne Barnes announcing "I'm Master Distiller for the new brand at the former Old Taylor Dist., where the Old Taylor brand was born").] Sazerac's OLD TAYLOR and COLONEL E. H. TAYLOR trademark rights prevent Peristyle from marketing itself as the source of Old Taylor bourbon today, but they do not serve as a gag order on historical accuracies.

Sazerac repeatedly contends there is no "historical use" exception to the Lanham Act, and the Court agrees. A number of exceptions to the Lanham Act are articulated in 15 U.S.C. §

10

1115(b), and historical use isn't one of them. But that does not mean Peristyle used the Old Taylor words as a mark in the first instance.

Sazerac is ultimately concerned that Peristyle's references to Old Taylor trade off Sazerac's goodwill. And trademark law, designed to protect a trademark holder's economic interests from misrepresentation, dilution, and fraud, is concerned with that, too. But, in this case, Peristyle is not attempting to trade off the goodwill of Sazerac. Instead, Peristyle is enjoying the goodwill already ingrained in the property it purchased and is advertising itself for what it is: a distillery first built by Colonel Taylor, subsequently abandoned, but once again purchased, renovated, and restored to life as Castle & Key. Peristyle ultimately seeks not to benefit from the reputation of Sazerac, but the reputation of Colonel Taylor himself. This is, in the end, what Sazerac too is trying to accomplish: distilling spirits and attracting consumers with a bit of assistance from the captivating history and ongoing legacy of the father of the modern bourbon industry.

Because this case is before the Court on summary judgment, the Court considers whether the record shows that there is no genuine issue as to any material fact, while viewing all evidence in the light most favorable to the non-moving party. *See* Fed. R. Civ. P. 56; *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 255 (1986). The Court has done so and concludes that no reasonable juror would find on this record that Peristyle's Old Taylor references constitute trademark use. Accordingly, the Court grants Peristyle's motion for summary judgment.

**B**

The Court's conclusion is perhaps best illustrated by considering the eight-factor test typically employed in trademark actions. While the Sixth Circuit has made clear that every trademark infringement case presents its own complex set of facts and circumstances, the court

has articulated eight factors, known as the "*Frisch*'s factors," to assist lower courts in determining whether a defendant's use of a mark is likely to cause consumer confusion and, therefore, violate the Lanham Act. *See, e.g.*, *Homeowners Grp., Inc. v. Home Mktg. Specialists, Inc.*, 931 F.2d 1100, 1106 (6th Cir. 1991); *Frisch's Rest., Inc. v. Elby's Big Boy, Inc.*, 670 F.2d 642, 648 (6th Cir. 1982). These factors include (1) the strength of the plaintiff's mark; (2) the relatedness of the services; (3) the similarity of the marks; (4) evidence of actual confusion; (5) marketing channels used; (6) the likely degree of purchaser care; (7) the intent of the defendant in selecting the mark; and (8) any likelihood of expansion of the product lines using the marks. *Homeowners,* 931 F.2d at 1106.

The eight-factor test is most often employed when a defendant clearly uses a plaintiff's mark (or something very similar to a plaintiff's mark) in the actual trademark sense—for example, where both parties label a product with the same words or symbol, or where two entities are doing business under similar names. *See Interactive Prod. Corp. v. a2z Mobile Office Solutions, Inc.*, 326 F.3d 687, 695 (6th Cir. 2003). In one often cited Sixth Circuit case, the operator of retail music stores doing business as "Daddy's" and "Daddy's Junky Music Stores" sued a competitor who began using the name "Big Daddy's Family Music Center." *Daddy's Junky*, 109 F.3d 275. Two almost identically branded golf clubs became embroiled in trademark litigation in *Champions Golf Club, Inc. v. The Champions Golf Club, Inc.*, 78 F.3d 1111 (6th Cir. 1996). And in another case (which, notably, also involved Kentucky bourbon), Maker's Mark Distillery filed suit against Diageo, the producer of Jose Cuervo tequila, when Diageo began selling tequila bottles capped with a red dripping wax seal, a feature commonly recognized as the trade dress of Maker's Mark products. *Maker's Mark Distillery, Inc. v. Diageo North Am. Inc.*, 679 F.3d 410 (6th Cir. 2010).

The *Frisch*'s factors require the Court to consider, for instance, the similarity of the parties' marks. This has been described as a factor of "considerable weight" in many trademark infringement cases. *See Daddy's Junky*, 109 F.3d at 283. But in the present dispute, both Sazerac and Peristyle use the phrase "Old Taylor" in different ways. Sazerac manufactures a brand of bourbon under that name, in accordance with its trademark rights. Peristyle's "mark," however, is technically Castle & Key. For the Court to evaluate this third *Frisch*'s factor appropriately, the Court has no choice but to assume Peristyle used "Old Taylor" in the trademark sense. The factor leaves no room to consider the uniqueness of the parties' dispute—namely, the fact that Peristyle did not begin labeling themselves "Old Taylor" on a whim. Old Taylor is, instead, the historical name of Peristyle's distillery as well as the name of the man who first built it.

Similarly, factors such as the relatedness of the two parties' services, the marketing channels used, and the likelihood of the parties' business expansion would all become crucial if the Court was presented with the Champions golf course case or the Maker's Mark versus Diageo dispute. *See Homeowners*, 931 F.2d at 1106. Here, though, the factors are irrelevant if Peristyle wasn't using the words as a mark. It is clear the parties will be direct competitors. Castle & Key is less than ten miles from Sazerac's Buffalo Trace Distillery, and the parties will attract similar business and provide almost identical services. The key inquiry, then, is not whether the parties' services and marketing efforts are sufficiently related so as to confuse potential consumers, but whether Peristyle has used the Old Taylor language in a way that triggers trademark liability in the first instance. Because the evidence shows that Peristyle has not used Sazerac's marks in a way that identifies the source of a product, the traditional eight-

factor analysis becomes unnecessary.  *See Hensley*, 579 F.3d at 610; *Interactive Prod.*, 326 F.3d at 694-95.

C

The Court's ruling in favor of Peristyle does not give the new distillery free reign to refer to Old Taylor however it pleases, and the parties should not interpret the Court's opinion in that way.  Rather, the Court recognizes the potential for abuse that exists in this unique situation and notes that Peristyle must take particular care not to infringe on the rights of Sazerac.  This is especially true as it relates to the historic signage on the property.  In light of the fact that Sazerac has obtained trademark rights in the OLD TAYLOR and COLONEL E. H. TAYLOR names, Peristyle has a heightened responsibility to avoid using the historic signage and the Old Taylor name in a way that causes market confusion.

For example, Peristyle should not use Sazerac's marks to promote Castle & Key's future bourbons.  Labeling a bourbon "Old Taylor" in whole or part would surely constitute trademark use and would also likely result in consumer confusion, causing relevant consumers to believe Castle & Key's products and Sazerac's products are affiliated in some way.  *See Homeowners*, 931 F.2d at 1107.  Further, while the historic signage on the property may remain, Peristyle should not construct additional signs featuring the marks.  The "Old Taylor Distillery Company" sign is part of the property's historic character in the same way the iconic stone castle-like buildings are.  Trademark law does not require Peristyle to erase the intellectual property inherent in its purchase.  But new signs promoting the Old Taylor name could confuse consumers about what Peristyle actually produces and would risk affiliating Peristyle's products with Sazerac's more so than the historic sign, which was constructed before Peristyle purchased the property, does.

At oral argument, Sazerac asked the Court to prevent Peristyle from "using Old Taylor Distillery or anything that involves Old Taylor, any formulation of it or anything that's similar to Old Taylor or E. H. Taylor, to market their product . . . ." [Tr. 10.] While the Court agrees that Peristyle should not engage in marketing activity under the Old Taylor name, the Court emphasizes that this does not require Peristyle to refrain altogether from mentioning the marks or to prevent any photographs or depictions of the historic sign going forward.

In the 2009 Sixth Circuit case *Hensley Manufacturing, Inc. v. ProPride, Inc.*, both the plaintiff and defendant manufactured trailer hitches designed by the same man, Jim Hensley. *See* 479 F.3d 603. The defendant ProPride used Jim Hensley's name on some of its advertising materials, but the plaintiff Hensley alleged that conduct constituted trademark infringement and confused the public as to the source of the ProPride trailer hitches. The Sixth Circuit granted ProPride's motion to dismiss Hensley's claims, ruling that the advertising materials clearly identified ProPride as the source of the relevant goods despite the advertisements' inclusion of Jim Hensley's name. *Id.* at 611.

*Hensley* is instructive in the present dispute because it suggests Sazerac's trademark rights will not be infringed if Old Taylor language appears on an occasional Castle & Key social media post or news article. A distinction clearly exists between using a trademarked word for marketing purposes, such that the public will be misled, and simply including a trademarked word on advertising or media materials in a more descriptive fashion. *See id.* at 610-11. Ultimately, the Court need not attempt to envision every possible scenario in which Peristyle's use of the Old Taylor marks might or might not violate trademark law. Instead, the Court simply rules that Peristyle's conduct thus far has constituted non-trademark use of the marks, but the

15

Court nevertheless reminds Peristyle to tread carefully to ensure total compliance with both federal and common trademark law in the days and years to come.

### III

*Don't believe 90 percent of the tales you read on whiskey bottles, but don't forget to enjoy them either. The stories are just like the whiskey itself. They start as a vapor, condense, and then sit unseen in a barrel for years. Finally they emerge, transformed into something entirely different and enchanting.*[13]

In Kentucky, bourbon history abounds, and every distillery wants to capture a piece of it. In this case, both Sazerac and Peristyle want to share in Colonel Taylor's striking story, and the law allows both parties to do so. Sazerac's trademark rights in the OLD TAYLOR and COLONEL E. H. TAYLOR names provide the party with certain legal protections. And now, Peristyle's restoration of one of Colonel Taylor's former properties provides the new distillery, too, with some historically-based advantages. As the Court has made clear above, Peristyle may not engage in marketing efforts at Sazerac's expense. But Peristyle's Old Taylor references to date have not infringed on Sazerac's marks, and summary judgment is appropriate.

Accordingly, the Court hereby **ORDERS** as follows:

1. Sazerac's Motion for Summary Judgment [R. 108] is **DENIED**;

2. Peristyle's Motion for Summary Judgment [R. 104] is **GRANTED**;

3. All other pending motions [R. 121; R. 122; R. 154] are **DENIED, AS MOOT**;

4. The Clerk of the Court is **DIRECTED** to file this Opinion and Order **UNDER SEAL**;

5. Within **seven (7) days**, each party shall **FILE UNDER SEAL** a proposed, redacted version of this Opinion and Order, keeping in mind the Sixth Circuit's strong preference against sealing judicial opinions. *See Shane Group, Inc. v. Blue Cross Blue Shield of Mich.*, 825 F.3d

---

[13] *See* MITENBULER, *supra* note 1 at 57.

16

299 (6th Cir. 2016); *Rudd Equipment Co., Inc. v. John Deere Constr. & Forestry Co.*, 834 F.3d 589 (6th Cir. 2016). Lack of response will indicate consent to file the instant Opinion and Order in the open record. Following the parties' submissions, the Court will make an appropriate version of the Opinion available to the public.

      This the 14th day of July, 2017.

Gregory F. Van Tatenhove
United States District Judge